IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RYAN FRANK BONNEAU,

    Plaintiff,

v.

3:10-CV-942-PK

FINDINGS AND
RECOMMENDATION

LIBERTY MUTUAL INSURANCE
COMPANY,

    Defendant.

---

PAPAK, Magistrate Judge:

    Plaintiff Ryan Bonneau, an incarcerated prisoner proceeding *pro se*, filed this action *in forma pauperis* against his homeowner's insurance provider, defendant Liberty Mutual Insurance Company ("Liberty"), on August 10, 2010. Bonneau amended his complaint effective June 4, 2012. Bonneau alleges that after his home was burglarized in June 2006, Liberty wrongfully refused to provide insurance coverage for Bonneau's loss. By and through his amended

Page 1 - FINDINGS AND RECOMMENDATION

complaint, Bonneau alleges Liberty's liability in connection with eight separately enumerated causes of action arising out of Liberty's alleged refusal to provide insurance coverage, styled specifically as claims for bad faith, breach of affirmative duty of care, duty to defend, intentional infliction of emotional distress (in two counts), negligence, breach of contract, and breach of duty/lack of good faith. This court has jurisdiction over Bonneau's claims pursuant to 28 U.S.C. § 1332, based on the complete diversity of the parties and the amount in controversy (Bonneau prays for $575,000 in actual damages and $1,150,000 in punitive damages).

Now before the court are Bonneau's motions (#67, #72) for entry of default judgment. For the reasons set forth below, both motions should be denied.

## LEGAL STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a). Whether to grant a judgment by default is within the discretion of the district court. *See Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986). Factors which may be considered by the district court in exercising its discretion to enter default judgment include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir. 1986). Default judgments are ordinarily disfavored. *See id.* at 1472.

Page 2 - FINDINGS AND RECOMMENDATION

## MATERIAL PROCEDURAL HISTORY

Bonneau filed this action on August 10, 2010. Originally assigned to Judge Jones, Bonneau's action was assigned to me on November 10, 2010. Liberty was first served with process in this action on or around January 11, 2011, and return of service was filed with the court on January 21, 2011. Ten days later, on January 31, 2011, Liberty moved for dismissal of Bonneau's claims against it as pled in Bonneau's originally filed complaint.

Two days after Liberty filed its motion to dismiss, on February 2, 2011, Bonneau moved for the first time for entry of default judgment. On February 9, 2011, Liberty having timely responded to Bonneau's complaint (and the twenty-one day period provided under Federal Civil Procedure Rule 12(a)(1)(A)(i) for filing a response thereto not having passed), I denied Bonneau's first-filed motion for entry of default by minute order.

On October 6, 2011, I construed Liberty's motion to dismiss as a motion for summary judgment, and directed Liberty either to file a supplemental legal memorandum in support of its motion so construed, together with any appropriate supporting evidence, or in the alternative to withdraw its motion and to file in its stead a motion for a more definite statement of Bonneau's claims. Liberty subsequently withdrew its motion, and moved for a more definite statement under Federal Civil Procedure Rule 12(e). On December 16, 2011, I granted Liberty's motion in part and denied it in part, and directed Bonneau to file an amended pleading curing the defects identified in my order, within thirty days.

Bonneau moved for extension of his deadline for filing his amended pleading on January 12, 2012, and again on March 20, 2012. On March 21, 2012, I reset the deadline to April 30, 2012. On April 30, 2012, Bonneau moved again for extension of the deadline, and on May 2,

Page 3 - FINDINGS AND RECOMMENDATION

2012, I reset the deadline to May 30, 2012, simultaneously advising the parties that "[n]o further extensions of . . . th[e] deadline w[ould] be allowed absent extraordinary circumstances."

On June 1, 2012, Bonneau nevertheless moved for further extension of the time provided him to file his amended complaint. On June 4, 2012, before I issued any ruling in connection with his most recent motion for extension of time, Bonneau filed his amended complaint. On June 8, 2012, I issued an order deeming Bonneau's amended complaint timely filed.

Bonneau moved for entry of default against Liberty on July 30, 2012. On August 1, 2012, Liberty filed an answer to Bonneau's amended complaint. Bonneau moved for default judgment again on August 17, 2012.

## ANALYSIS

Liberty's counsel explains Liberty's failure to file a response to Bonneau's amended complaint within twenty-one days after it was filed through a sworn declaration. Counsel explains, accurately, that despite the fact that Bonneau's motion (#60) for extension of time and supporting declaration (#62) were assigned filing dates of June 1, 2012, and Bonneau's amended complaint (#61) a filing date of June 4, 2012, all three filings were entered into the docket on June 6, 2012. I note that, evidently due to the docketing clerk's inadvertence, the later-submitted amended complaint was assigned a docket number inaccurately suggesting that it had been filed in between the motion for extension of time and that motion's supporting declaration (effectively, as having been filed simultaneously with the motion for extension of time). Counsel declares that he received email notifications of the three filings on June 6, 2012, all within a three-minute space of time.

Counsel further declares that, in part because Bonneau expressly characterized his

Page 4 - FINDINGS AND RECOMMENDATION

amended complaint as a "work-in-progress" in the body of his motion for extension of time, and in part because of the foredescribed timing of the documents' entry into the docket, he understood the amended complaint (#61) to constitute an incomplete draft of Bonneau's amended pleading, and did not understand that Bonneau intended that document to serve as his amended pleading. Counsel does not explain his failure to take note of the court's minute order (#65) of June 8, 2012, providing in part that "Plaintiff's Amended Complaint 61, filed 6/4/12, is allowed," but I note that the minute order, considered in its entirety, is not a model of clarity, and I do not find that consideration of its text would necessarily have put counsel on notice that his understanding of the status of the filing of June 4, 2012, was incorrect.

Whether to grant a default judgment is wholly discretionary. Here, none of the seven *Eitel* factors informing the court's exercise of such discretion mitigate in favor of entry of default. The first such factor, the possibility of prejudice to the plaintiff, *see Eitel*, 782 F.2d at 1471, does not so mitigate because there is no serious suggestion that the brief delay could have prejudiced Bonneau, particularly in light of the many months of delay occasioned by Bonneau's own motions for extension of time and dilatory conduct. The second and third such factors, the likely merits of the plaintiff's claims and the sufficiency of the plaintiff's complaint, *see id.*, do not so mitigate because analysis of Bonneau's amended complaint suggests that all of Bonneau's claims may be time-barred, and moreover that even if not time-barred, several of the claims are not well taken. The fourth such factor, the sum of money at stake, *see id.*, does not so mitigate because Bonneau seeks to impose liability on Liberty in the amount of nearly $2 million in connection with Liberty's alleged failure to compensate him for losses incurred as a result of the burglary of his home. The fifth such factor, the possibility of a material factual dispute, *see id.* at 1471-1472,

Page 5 - FINDINGS AND RECOMMENDATION

is necessarily a wash, in that the record does not permit any determination at this time whether such a dispute is likely.

The sixth *Eitel* factor, whether the delay was caused by excusable neglect, *see id.* at 1472, mitigates against entry of default. The courts of the Ninth Circuit apply the standard for determining whether excusable neglect is applicable set forth by the United States Supreme Court according to the following framework:

> Excusable neglect "encompass[es] situations in which the failure to comply with a filing deadline is attributable to negligence," *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 394, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993), and includes "omissions caused by carelessness," *id.* at 388. The determination of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395. To determine when neglect is excusable, we conduct the equitable analysis specified in *Pioneer* by examining "at least four factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Bateman* [*v. U.S. Postal Serv.*, 231 F.3d 1220, 1223-24 (9th Cir. 2000)], (*citing Pioneer*, 507 U.S. at 395). Although *Pioneer* involved excusable neglect under Federal Rule of Bankruptcy Procedure 9006(b), in *Briones v. Riviera Hotel & Casino*, 116 F.3d 379 (9th Cir. 1997), we concluded that the *Pioneer* standard governs analysis of excusable neglect under Rule 60(b)(1). *See id.* at 381.

*Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir. 2009). The delay here being short, the record containing no indication that the delay occasioned Bonneau any prejudice, the cause of the delay being defense counsel's justified confusion over the status of Bonneau's efforts to amend his pleading, and the evidence of record containing no grounds for doubting counsel's good faith, I find that counsel's failure to timely answer Bonneau's amended complaint was entirely due to excusable neglect under *Pioneer* and *Lemoge*.

The seventh *Eitel* factor, "the strong policy underlying the Federal Rules of Civil

Page 6 - FINDINGS AND RECOMMENDATION

Procedure favoring decisions on the merits," *Eitel*, 782 F.2d at 1472, always mitigates against entry of default judgment. Nothing in the record before the court suggests that departure from that policy could be justified here.

I note, further, that Federal Civil Procedure Rule 55(b)(2) requires that, where a party seeks entry of default against another party that, like Liberty in this action, has already made an appearance in the action, the party seeking default must first give the party against whom default is sought at least seven days notice of the application for default. *See* Fed. R. Civ. P. 55(b)(2). Moreover, Local Rule 55-1, entitled "Conference Required Prior to Filing for Default," provides as follows:

> If the party against whom an order or judgment of default pursuant to Fed. R. Civ. P. 55 is sought has filed an appearance in the action, or has provided written notice of intent to file an appearance to the party seeking an order or judgment of default, then LR 7-1 and LR 83-8 apply, and the parties must make a good faith effort to confer before a motion or request for default is filed.

L.R. 55-1. Here, Bonneau made no effort either to provide Liberty with notice of his application or to confer with Liberty's counsel prior to applying for default judgment. While Bonneau's failure to do so may be justified in light of Bonneau's status as an incarcerated plaintiff proceeding *pro se*, the alacrity with which Liberty filed its answer to Bonneau's amended complaint after receiving notice that the amended complaint had been filed strongly suggests that, had Liberty received advance notice of Bonneau's intent to seek default, it would have rendered the issue moot without need for Bonneau to resort to motion practice.

Finally, as noted above, Liberty has filed its answer. In consequence, I agree with Liberty that it would be inappropriate to enter default judgment against it.

## CONCLUSION

For the reasons set forth above, Bonneau's motions (#67, #72) for entry of default judgment should be denied.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

## NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

Dated this 12th day of December, 2012.

/s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge

Page 8 - FINDINGS AND RECOMMENDATION